FOR THE UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SAMPSON PEARSON,<br><br>Defendant, | 3:19CR-169-MOC<br><br>***MOTION TO PRECLUDE VICTIM IMPACT TESTIMONY AND DEMONSTRATIVE EVIDENCE*** |

SAMPSON PEARSON ("Mr. Pearson"), by and through his counsel of record, KEVIN A. TATE, Senior Litigation Counsel, Federal Public Defender-WDNC, pursuant to the provisions of the Due Process Clause of the Fifth Amendment and the Sixth Amendments to the United States Constitution, as well as, Federal Rules of Evidence ("Fed. R. Evid.") 401, 402 and 403, hereby moves this Honorable Court for an **ORDER** precluding the government from introducing irrelevant and prejudicial *Victim Impact Testimony* or demonstrative evidence through the following potential government witnesses, or any other witness that may testify at Mr. Pearson's trial:

Mr. Pearson seeks to preclude pretrial, *inter alia*, testimonial comments and documentary evidence introduced through government witnesses regarding their personal financial losses; impact to the personal credit scores and ability to obtain loans; any lingering effects related to the loss of money from investments made with Mr. Pearson, as well as, any consequential loss of revenue or ability to make future investments.

1

In addition, Mr. Pearson seeks to preclude just noticed so called "expert" testimony by an IRS agent regarding purported "tax losses" suffered by the United States Government.

## INTRODUCTION

The Indictment charges Mr. Pearson with nine (9) offenses: Count 1 with violating Title 18 U.S.C. § 1343 (Wire Fraud Scheme); in Counts Two through Five with violating Title 18 U.S.C. § 1028 (A) (Aggravated Identity Theft); and in Counts Six through Nine with violating 26 U.S.C. § 7206(1) (Filing False Tax Returns).

## MEMORADUM OF LAW

I. *The Government Must Be Precluded from Soliciting Prejudicial Victim Impact Testimony*

While in the process of reviewing discovery, including tendered witness statements, many of those statements contain what is commonly known as *victim impact* information.[1] The Federal Rules of Evidence bar this type of testimony if it is not "of consequence to the determination of the action, "(Fed. R. Evid. 401), or if "its probative value is substantially outweighed by the danger of unfair prejudice". (Fed. R. Evid. 403). What is more, the Due Process Clause of the Fifth Amendment is violated by the introduction of "victim impact evidence . . . that is so unduly prejudicial that it renders the trial fundamentally unfair." *Payne* v. *Tennessee*, 501 U.S. 808, 825 (1991).

Victim-impact evidence can be so inflammatory that, before deciding *Payne* in 1991, the Supreme Court held that such evidence was barred even at the penalty phase of capital cases under

---

[1] The defense requests leave to supplement this motion as it may become necessary based on the receipt of going additional discovery.

the Eighth Amendment. *See Booth* v. *Maryland*, 482 U.S. 496 (1987). *Payne*, however, held that the Eighth Amendment does not impose a *per se* bar to admitting such testimony in a penalty phase. 501 U.S. at 827. *Payne* also acknowledged that "evidence relating to the victim" is relevant to and thus admissible at, <u>only</u> the guilt phase of many capital cases. *Id.* at 823; *id.* at 840 (Souter, J., concurring).

The Fourth Circuit Court of Appeals has construed *Payne* to mean that "*limited victim background* evidence may be admitted—indeed, may have to be admitted—at the guilt phase of trial." *Bennett v. Angelone*, 92 F.3d 1336, 1348 (4th Cir. 1996) (emphasis added). The Fourth Circuit has never held that the government may offer the evidence to prove the *impact* of a crime on a victim's life, as opposed to proving *background* information that the jury must understand in order to ascertain how the crime occurred.

Other appellate courts have similarly eschewed *victim-impact testimony*. For example, the Third Circuit has held that a district court erred when, by permitting the government to introduce testimony about the losses suffered by the victims of fraud, it "encouraged the government to introduce a wide range of victim impact testimony in addition to the testimony about the size of the losses." *United States* v. *Copple*, 24 F.3d 535, 545 (3d Cir. 1994). In *Copple*, several victims who lost money in a fraud case "testified that paying back the money had affected their health, or had been taken from savings dedicated to . . . special purposes." *Ibid.* Those purposes included "their children's college educations," "personal savings," and the "purchase [of] a home." *Id.* at 545-46.

3

The Third Circuit concluded that admitting that type of evidence was improper and explained:

> Even if there had been some marginal relevance to the testimony about the particular personal or professional impact the losses had on the funeral directors, its principal effect, by far, was to highlight the personal tragedy they had suffered as victims of the scheme. The testimony was designed to generate feelings of sympathy for the victims and outrage toward Copple for reasons not relevant to the charges Copple faced. It arguably created a significant risk that the jury would be swayed to convict Copple as a way of compensating these victims wholly without regard to evidence of Copple's guilt. *Id.* at 546; *cf. George* v. *Angelone*, 100 F.3d 353, 359 (4th Cir. 1996) (noting that "[t]he Virginia courts reason that . . . facts relevant only to the impact of the crimes on its victims and their relatives in no way assist in determining either the guilt or the innocence of the accused") (internal quotation marks and citation omitted).

In *United States* v. *Fell*, 531 F.3d 197, 239 (2d Cir. 2008) the court held "the victim impact evidence and character evidence constitutionally required for sentencing purposes can sometimes be unduly prejudicial, inflammatory, or irrelevant to guilt"; *see also*, State v. *Davis*, 627 S.E.2d 474, 478 (N.C. Ct. App. 2006) ("victim-impact evidence is generally inadmissible during the guilt/innocence phase of a trial"). Courts exclude *victim-impact testimony* precisely because it tends to convince juries to convict because of sympathy toward the victim and "without regard to evidence of [the defendant's] guilt." *Copple*, 24 F.3d 546.

Those cases establish that the admission of *victim-impact testimony* would plainly violate both the Federal Rules of Evidence and Mr. Pearson's Due Process rights. Even assuming the testimony of potential government witnesses are true and proven, the impact of those allegations on the victim is not relevant to any elements of the offenses charged. Admitting such testimony and evidence only invites constitutional error, and more important, would deprive Mr. Pearson of his right to a fair trial. *See Payne*, 501 U.S. at 825.

## CONCLUSION

For the foregoing reasons, the government must be precluded from attempting to solicit *Victim Impact* testimony and/or documentary evidence from any witnesses at trial concerning their personal financial losses; the impact to the personal credit scores and ability to obtain loans, as well as, any lingering effects related to the loss of money from investments made with Mr. Pearson. The "expert" testimony by an IRS agent noticed should also be precluded to the extent the witness will testify about purported "tax losses" suffered by the government.[2]

Respectfully submitted,

*/s/ Kevin A. Tate*
Kevin A. Tate
NC Bar No. 38548
Senior Litigation Counsel
Federal Defenders-Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC   28202
Phone:   (704) 374-0720
Fax: (704) 374-0722
Email:   kevin_tate@fd.org

**Counsel for SAMPSON PEARSON**

Dated:   September 3, 2021

---

[2] This Noticed testimony by an IRS agent received this afternoon, will be the subject of a separate Motion seeking to exclude that testimony on separate legal grounds.